IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTIN SCHARAGA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 13 C 7380 |
| | ) |
| GROSSINGER AUTOPLEX, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Grossinger Autoplex, Inc.'s (Grossinger) motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted in its entirety.

**BACKGROUND**

In September 2005, Plaintiff Martin Scharaga (Scharaga) allegedly began working for Grossinger as a car salesman. According to Scharaga, other management employees at Grossinger such as John Panousopoulos (Panousopoulos) made derogatory comments about the older workers at Grossinger relating to their age. In addition, in January 2011, when Alex Kaliakmanis (Kaliakmanis) became the Sales Manager for Grossinger, Kaliakmanis allegedly began giving the older car

1

salesmen such as Scharaga fewer leads to potential customers. Scharaga allegedly complained about his treatment and he subsequently was given fewer customer leads. Grossinger also allegedly ultimately terminated the employment of Scharaga. Scharaga includes in his complaint a claim alleging discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*, an ADEA hostile work environment claim, and an ADEA retaliation claim. Grossinger now moves for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v.*

*Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I.  ADEA Discrimination Claim

Grossinger moves for summary judgment on the ADEA discrimination claim. A plaintiff who is bringing an ADEA discrimination claim and is seeking to defeat a defendant's motion for summary judgment can proceed under the direct or indirect method of proof. *Hutt v. AbbVie Products LLC*, 757 F.3d 687, 691 (7th Cir. 2014). Scharaga argues that he can proceed under both the direct and indirect methods of proof.

A. Direct Method of Proof

A plaintiff seeking to proceed under the direct method of proof for an ADEA discrimination claim must point to sufficient direct and/or circumstantial evidence "to present a convincing mosaic of circumstantial evidence from which a factfinder can make a reasonable inference of discriminatory intent." *Hutt*, 757 F.3d at 691 (internal quotations omitted)(quoting *Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 660 (7th Cir. 2013); *see also Teruggi*, 709 F.3d at 659-60 (stating that "[t]o survive summary judgment on his claims under the" ADEA, the plaintiff "must offer evidence from which an inference of discriminatory intent can be drawn, such as: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in

3

the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action")(internal quotations omitted)(quoting *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011)).

Scharaga offers only one conclusory sentence explaining why the evidence is sufficient to proceed under the direct method of proof. Scharaga refers the court to a series of paragraphs in the statement of material facts. (SJ Resp. 5). However, it is Scharaga's burden to point to the evidence in his opposition. *See Diadenko v. Folino*, 741 F.3d 751, 757-58 (7th Cir. 2013)(stating that "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events")(internal quotations omitted)(quoting *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)). Simply providing a string of references to other documents for the court to cross-reference and peruse for evidence to support Scharaga's position is not sufficient. Scharaga also references in a conclusory fashion the frequency and quality of sales leads given to older employees, but Scharaga fails to specifically address such evidence or explain how such evidence would enable him to proceed under the direct method of proof. (Resp. SJ 5). Even when considering the evidence in its totality, Scharaga has not pointed to sufficient evidence from which an inference of discriminatory intent can be drawn, or sufficient evidence to provide a convincing mosaic of discrimination. Thus, Scharaga has not pointed to sufficient

direct or circumstantial evidence to proceed under the direct method of proof.

B.  Indirect Method of Proof

To proceed under the indirect method of proof on an ADEA discrimination claim a plaintiff must first establish a *prima facie* case by showing: (1) that "he is a member of the protected class," (2) that "he was performing well enough to meet his employer's legitimate expectations," (3) that "he suffered an adverse employment action," and (4) that "similarly situated employees not in his protected class were treated more favorably." *Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 627 F.3d 596, 599-600 (7th Cir. 2010); *see also Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 609 (7th Cir. 2012)(stating that for an ADEA *prima facie* case, a plaintiff must show that "similarly situated, substantially younger employees were treated more favorably")(internal quotations omitted)(quoting *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771-72 (7th Cir. 2002)); *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 704 (7th Cir. 2012)(stating that "materially adverse employment actions can be categorized into three groups of cases involving: (1) the employee's current wealth such as compensation, fringe benefits, and financial terms of employment including termination; (2) the employee's career prospects thus impacting the employee's future wealth; and (3) changes to the employee's work conditions including subjecting her to 'humiliating, degrading, unsafe, unhealthful, or otherwise significant negative alteration in [his] work place environment'")(quoting in part *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002)).  If the

5

plaintiff establishes a *prima facie* case, the burden shifts to the defendant "to offer a legitimate, nondiscriminatory reason for the adverse employment action." *Naik*, 627 F.3d at 599-600. If the defendant presents such a reason, the burden shifts to the plaintiff to "demonstrate that the reasons offered were pretextual." *Id.*

Grossinger argues that Scharaga has failed to show that he suffered a material adverse employment action, and has failed to point to a similarly-situated employee not in his protected class who was treated more favorably.

### 1. Material Adverse Employment Action

Grossinger argues that it did not take a material adverse employment action against Scharaga when it terminated Scharaga's employment. Although Grossinger's position is that Scharaga's employment was terminated because of insubordination, that would not mean that for the purposes of establishing a *prima facie* case, Grossinger did not take a material adverse employment action against Scharaga. Grossinger also argues that the termination of Scharaga's employment could not be part of the alleged discrimination because it was Panousopoulos who allegedly made the derogatory comments to Scharaga, and it was Kaliakmanis who made the decision to terminate Scharaga's employment. However, there is nothing that requires a plaintiff to show that the same managerial employee committed all the alleged discriminatory acts. Thus, Scharaga has shown that he suffered a material adverse employment action for the purposes of establishing his *prima facie* case for his ADEA discrimination claim.

2. Similarly-Situated Employees

Scharaga fails to specifically identify any similarly-situated employee outside the protected class who was treated more favorably. A similarly-situated employee is one who is "directly comparable to the plaintiff in all material respects . . . ." *Moultrie v. Penn Aluminum Intern., LLC*, 766 F.3d 747, 753 (7th Cir. 2014)(stating that the employees "need not be identical in every conceivable way")(internal quotations omitted)(quoting *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012)). Scharaga vaguely refers to "pertinent evidence" in the statement of material facts. (Resp. SJ 6). However, it is Scharaga's obligation to point to specific evidence and he cannot simply direct the court to other documents asking the court to search for evidence that supports his case. Scharaga also makes a general argument concerning older and younger salespersons. (Resp. SJ 6). However, Scharaga must do more than vaguely reference older and younger groups. Scharaga must specifically identify an employee outside the protected class or at least a substantially younger employee, show that the employee was similarly-situated to Scharaga, and that the employee was treated more favorably than Scharaga. *Moultrie, LLC*, 766 F.3d at 753 (finding that the plaintiff had failed to specifically identify any individuals who met the similarly-situated requirement); *Huang v. Continental Cas. Co.*, 754 F.3d 447, 451 (7th Cir. 2014)(indicating that the plaintiff "needed to identify another employee, outside of his protected class, who" was similarly-situated and was treated more favorably); *Chaib v. Indiana*, 744 F.3d 974, 984 (7th Cir. 2014)(indicating that the plaintiff "failed to identify any similarly situated

7

individuals outside of her protected class who were treated more favorably" and that the plaintiff was required to provide an "identification of similarly situated comparators"). Scharaga failed to point to any specific employee that would satisfy the similarly-situated requirement in the section of his opposition brief addressing the indirect method of proof of his discrimination claim. (Resp. SJ 5-7). Thus, Scharaga has failed to present a *prima facie* case and Grossinger is entitled to summary judgment on the ADEA discrimination claim. Nor has Scharaga pointed to evidence to proceed under the alternative route to the similarly-situated requirement. *See Timmons v. General Motors Corp.*, 469 F.3d 1122, 1126 (7th Cir. 2006)(stating that if "a plaintiff cannot identify similarly situated employees," he can show instead "that the circumstances surrounding the adverse action indicate that it is more likely than not that his" protected characteristic "was the reason for it")(internal quotations omitted)(quoting *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001)).

The court also notes that even if Scharaga had succeeded in presenting a *prima facie* case, Scharaga has failed to point to sufficient evidence to show that the reason given for Scharaga's termination was a pretext. Grossinger contends that Scharaga's employment was terminated because Scharaga was insubordinate. Scharaga admits that when he was given a warning by a supervisor, he responded with profanity, which he admits constituted insubordination. (RSF Par. 45); (Sch. Dep. 24). Scharaga admits to calling the warning: "bull___" and indicates that he "possibly" may have told his supervisor to "stick it up his _____." (Sch. Dep. 105). Scharaga claimed at his deposition that he never raised his voice and no other employees heard

8

Scharaga's remarks. (Sch. Dep. 105). However, regardless of whether other employees overheard Scharaga's remarks, the undisputed facts show that the remarks constituted insubordination. In addition, although Scharaga contends that his supervisor, Panousopoulos, made certain derogatory comments to him, it is undisputed that after Scharaga complained about it, the comments stopped. (RSF Par. 31-37, 41). Scharaga also testified at his deposition that after he complained, Panousopoulos was sent to work "upstairs" away from Scharaga. (Sch. Dep. 97). Scharaga also references other evidence such as isolated comments and assignment of customer appointments, but such evidence falls short of showing that Grossinger's reason was a pretext. Therefore, Grossinger's motion for summary judgment on the ADEA discrimination claim is granted.

II. ADEA Hostile Work Environment Claim

Grossinger moves for summary judgment on the ADEA hostile work environment claim. The Seventh Circuit has not held that a hostile work environment claim can be brought under the ADEA and this court need not decide the issue because, even if such a claim were available in this Circuit, Scharaga has failed to point to sufficient evidence to support such a claim. *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005)(stating that the "court has assumed, but never decided, that plaintiffs may bring hostile environment claims under the ADEA"); *see also Bennington v. Caterpillar Inc.*, 275 F.3d 654, 660 (7th Cir. 2001)(stating that the Seventh Circuit "has assumed, without deciding, that plaintiffs

may bring hostile environment claims under the ADEA"); *Fugate v. Dolgencorp, LLC*, 555 Fed.Appx. 600, 603 (7th Cir. 2014)(citing *Racicot*, 414 F.3d at 678 for proposition that it has not yet been decided in the Seventh Circuit whether a hostile work environment claim can be brought under the ADEA). For a hostile work environment claim, the plaintiff must show that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." *Bennington*, 275 F.3d at 660 (internal quotations omitted)(quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). In determining whether a hostile work environment existed, the court should consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance. . . ." *Id.*; *see also Orton-Bell v. Indiana*, 759 F.3d 768, 773 (7th Cir. 2014)(stating that "to avoid summary judgment on a hostile work environment claim, a plaintiff must establish four elements: (1) the work environment must have been both subjectively and objectively offensive; (2) [his protected characteristic] must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability")(internal quotations omitted)(quoting *Chaib*, 744 F.3d at 985).

### A. Severity and Pervasiveness

In the instant action, Scharaga argues that there was a hostile work environment which Scharaga refers to as a "hostile atmosphere." (Resp. SJ 8-9).

Scharaga testified at his deposition that the sole basis for his hostile work environment claim is the alleged comments by Panousopoulos, and "his attitude toward" Scharaga and others. (Sch. Dep. 140). Scharaga indicates that Panousopoulos would make derogatory comments to him and other workers. (RSF Par. 26). Scharaga contends that on one occasion, Panousopoulos referred to Scharaga and co-workers as "geriatrics." (RSF Par. 29). On another occasion, Panousopoulos allegedly referred to another employee who Scharaga was working with as "old and stupid." (RSF Par. 29). Finally, Panousopoulos allegedly "always" used the term "old man," at work. (RSF Par. 29). Although Scharaga refers to other statements allegedly made to other older employees at Grossinger, Scharaga fails to point to evidence that shows that he was present when such statements were made. (RSF Par. 29). For example, Scharaga refers to the deposition of Gus Jonas (Jonas) when Jonas describes what he heard in the workplace. (Jonas Dep. 20-26). However, there is no evidence that shows that Scharaga was present when Jonas heard the alleged statements. The Seventh Circuit has held that second-hand harassment that is not directed at the plaintiff is considered less severe than harassment that is directed at the plaintiff. *Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 602 (7th Cir. 2014)(stating that "[w]hen harassing statements are directed at someone other than the plaintiff, the impact of [such] second hand harassment is obviously not as great as the impact of harassment directed at the plaintiff")(internal quotations omitted)(quoting *Russell v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 243 F.3d 336, 343 (7th Cir. 2001)); *Valentine v. City of Chicago*, 452

F.3d 670, 681 (7th Cir. 2006)(stating that "[i]n the case of discriminatory statements, [the court] must assess the frequency of their use, as well as whether the remarks were stated directly to the plaintiff or whether the plaintiff heard them secondhand")(internal quotations omitted)(quoting *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271 (7th Cir. 2004)); *Mason v. So. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1047 n.9 (7th Cir. 2000)(stating that hearing comments "through the grapevine" is considered to have a lesser impact).

While the alleged second-hand harassment may be considered, even when giving it the appropriate consideration and considering the additional limited remarks allegedly made to Scharaga, such comments were not sufficiently pervasive to create a hostile work environment. As to two of the alleged derogatory statements by Panousopoulos, they each were made only on one occasion. As to the alleged use of the term "old man," which Scharaga contends was used on more than one occasion, there is no indication that the term was pervasive to the extent that it would have materially affected Scharaga's work environment. Nor has Scharaga shown that such comments were sufficiently severe to create a hostile work environment. Scharaga contends that Panousopoulos would say "old man" or "hey old man." (Sch. Dep. 79). While such comments may have been inappropriate, offensive, and insensitive, they do not constitute the type of conduct that would create a hostile work environment. Scharaga also contends that after the comments by Panousopoulos stopped, Scharaga's work "still was not a pleasant experience." (Sch. Dep. 140). However, more is required to establish a hostile work environment than

an unpleasant workplace. In addition, the court notes that the record indicates that Panousopoulos was not kind to any of his subordinates, including the younger workers. For example, Jonas testified that Panousopoulos yelled at the older workers and also would "swear at the younger folks," and that Panousopoulos was "just. . . a rough individual. . . ." (Jonas Dep. 21). Even when considering all of the alleged harassment pointed to by Scharaga in its totality, Scharaga has not shown that he suffered harassment based on his age that was sufficiently severe or pervasive to create a hostile work environment.

### B. Affirmative Defense

Grossinger argues that even if Scharaga could establish the elements for a hostile work environment claim, Grossinger would prevail on such claim under the *Faragher/Ellerth* affirmative defense. If an employer does not take a tangible employment action against the plaintiff, the employer may raise the *Faragher/Ellerth* affirmative defense to a hostile work environment claim. *Hall v. City of Chicago*, 713 F.3d 325, 335 (7th Cir. 2013). Under the *Faragher/Ellerth* affirmative defense, the defendant must show "that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior," and "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Hall*, 713 F.3d at 335; *E.E.O.C. v. Management Hospitality of Racine, Inc.*, 666 F.3d 422, 431 (7th Cir. 2012).

### 1. Tangible Employment Action

Grossinger argues that Scharaga did not suffer any tangible employment action as part of the alleged hostile work environment. As indicated above, Scharaga has shown that his termination was a material adverse employment action. However, for his hostile work environment claim, Scharaga must show that a "tangible employment action [w]as taken . . . in the course of the harassment. . . ." *Passananti v. Cook County*, 689 F.3d 655, 670 (7th Cir. 2012). Scharaga admits pursuant to Local Rule 56.1 that he complained to Human Resources in November 2011, and that after he complained he never heard any more offensive remarks relating to his age. (RSF Par. 41, 44-47). Scharaga argues that he was "fired on a pretext four (4) months later." (RSF Par. 38). Scharaga thus acknowledges that the alleged harassment ceased in November 2011, and that the alleged harassment did not culminate in his termination. In addition, to the extent that Scharaga argues that he had lost his privilege to drive a car in the dealership's fleet in exchange for a weekly fee, he has not shown that such an action would be sufficient to constitute a tangible employment action in the course of the alleged harassment. To the extent Scharaga argues that his ultimate termination was based on a pretext, that would be relevant to his discrimination claim rather than his hostile work environment claim. Thus, Scharaga has not shown that he suffered a tangible employment action in relation to the alleged hostile work environment.

### 2. Prevention and Correction of Harassment

Grossinger argues that it exercised reasonable care to prevent and promptly correct any harassing behavior. It is undisputed that during Scharaga's employment, Grossinger had policies that prohibited discrimination and harassment in the workplace. (RSF Par. 6). It is also undisputed that after Scharaga complained to Human Resources in November 2011, an investigation was conducted by management and that after Scharaga complained, he never heard any more offensive remarks relating to his age. (RSF Par. 31-35, 41). Thus, the undisputed facts show that Grossinger exercised reasonable care to prevent and promptly correct any harassing behavior.

### 3. Failure to Take Advantage of Corrective or Preventive Opportunities

As explained above, it is undisputed that once Scharaga complained about the alleged harassment, it stopped. Also, although Scharaga contends that the alleged harassment went on for an extended period of time, Scharaga failed to immediately come forth and complain about the harassment as required under the anti-harassment policies at Grossinger, and Scharaga instead waited to see if the situation improved without the assistance of Human Resources. (RSF Par. 30-31). Grossinger has thus shown that it is entitled to prevail on the hostile work environment claim based on the *Faragher/Ellerth* affirmative defense. Based on the above, Grossinger's motion for summary judgment on the ADEA hostile work environment claim is granted.

## III. ADEA Retaliation Claim

Grossinger moves for summary judgment on the ADEA retaliation claim. A plaintiff who is bringing an ADEA retaliation claim and is seeking to defeat a defendant's motion for summary judgment can proceed under the direct or indirect method of proof. *Hutt*, 757 F.3d at 693. Scharaga argues that he can proceed under both methods of proof.

### A. Direct Method of Proof

To proceed under the direct method of proof for an ADEA retaliation claim, a plaintiff must show: (1) that he "engaged in statutorily protected activity," (2) that he "suffered an adverse employment action," and (3) that "there is a causal connection between the two." *Id.* In the instant action, Scharaga has shown that after he complained about alleged harassment he was fired. However, Scharaga fails to point to sufficient circumstantial evidence showing any connection between his protected activity and the termination of his employment. Scharaga admits that the alleged comments by Panousopoulos ended long before his termination. (RSF Par. 41). In addition, Scharaga admits that he engaged in insubordination at the time of his termination, which further separates any protected activity from the action taken against him. (RSF Par. 45). Scharaga has not shown that he can proceed under the direct method of proof on his ADEA retaliation claim.

### B. Indirect Method of Proof

To proceed under the indirect method of proof on an ADEA retaliation claim a

plaintiff must first establish a *prima facie* case by showing: (1) that he "engaged in statutorily protected activity," (2) that he "met the employer's legitimate expectations," (3) that he "suffered an adverse employment action," and (4) that he "was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657-58 (7th Cir. 2012); *see also Barton v. Zimmer, Inc.*, 662 F.3d 448, 456 (7th Cir. 2011)(explaining that "[t]he standard for a materially adverse action sufficient for a retaliation claim is somewhat more forgiving than for a discrimination claim, but the action must be severe enough to dissuade a reasonable employee from exercising statutory rights"). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to provide a legitimate non-discriminatory reason for the action, and if the defendant provides such a reason, the burden shifts back to the plaintiff to show that the reason was a pretext for unlawful discrimination. *Vanasco v. National-Louis University*, 137 F.3d 962, 968-69 (7th Cir. 1998).

In the instant action, Scharaga fails to identify any specific similarly-situated employee outside the protected class who was treated more favorably. Scharaga makes only a general reference to actions that "favored younger employees," which is insufficient to meet his burden for a *prima facie* case. (Resp. SJ 10). Nor are younger employees even the appropriate group that would constitute members outside the protected class in the retaliation context. For the retaliation claim, Scharaga needed to identify an employee or employees who did not exercise their rights under the ADEA and compare such employees to himself. *See Smith*, 674

17

F.3d at 657-58 (stating that a plaintiff must point to "similarly situated employees who did not engage in statutorily protected activity"). Nor has Scharaga shown that he can proceed under the alternative to the similarly-situated requirement. *Timmons*, 469 F.3d at 1126. Scharaga also admits to insubordination at the time of the termination of his employment and thus was not meeting his employer's legitimate expectations. Scharaga has thus failed to establish a *prima facie* case for his ADEA retaliation claim. In addition, even if Scharaga had established a *prima facie* case, he has failed to point to sufficient evidence to show that the reason given for the termination of his employment was a pretext. Scharaga theorized at his deposition that if he had not been mistreated earlier he would not have been insubordinate. (Sch. Dep. 142). However, even if Scharaga had been harassed earlier, the undisputed facts show that Grossinger took steps to correct the problem, and such prior harassment would not give Scharaga a license to be insubordinate. Therefore, Grossinger's motion for summary judgment on the ADEA retaliation claim is granted.

## CONCLUSION

Based on the foregoing analysis, Grossinger's motion for summary judgment is granted in its entirety.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 9, 2015